FILED 08 APR 02 15:08 USDC-LAE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET NO.:  07-273** |
| **VERSUS** | * | **SECTION: "D" (4)** |
| **WARREN OTIS PATTERSON** | * | |

\* \* \*

## FACTUAL BASIS

If this case were to proceed to trial, the Government would prove the Defendant guilty beyond a reasonable doubt of Count One of the Superseding Bill of Information. The Defendant, **WARREN OTIS PATTERSON**, is charged with knowingly and intentionally combining, conspiring, confederating, and agreeing with one or more persons to distribute and possess with the intent to distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II narcotic drug controlled substance; in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(B)(ii). The Government would establish the following examples of **PATTERSON**'s involvement in the conspiracy through reliable and competent evidence:

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No_____

1.) Beginning at a time unknown, but prior to July 25, 2006, and continuing until on or about February 19, 2007, in the Eastern District of Louisiana, **PATTERSON** participated in a drug distribution organization that conspired to obtain and distribute five (5) or more kilograms of cocaine hydrochloride ("cocaine"), fifty (50) grams or more of cocaine base ("crack cocaine"), and over one thousand (1000) pounds of marijuana. This organization utilized cocaine and marijuana initially brought into Louisiana from Texas by one Gabriel Juron Bolden.

2.) During the time of the conspiracy charged in the Indictment, **PATTERSON** received cocaine from his co-conspirator, Bruce Carter, Jr., and **PATTERSON** used various telephone facilities to coordinate illegal drug activities with his co-conspirators. **PATTERSON**'s drug-related conversations with Carter were monitored and recorded by members of the Federal Bureau of Investigation ("FBI") through two (2) court-authorized wire intercepts of a telephone facility used by Carter. During many of these conversations, **PATTERSON** used coded language – including words or phrases such as "puppy" to indicate an ounce of cocaine, "whole nine" to indicate a quarter (¼) kilogram of cocaine, and "solid" to indicate cocaine base, or "crack cocaine" – in order to conceal the true nature of the calls.

3.) An example of **PATTERSON**'s use of a telephone facility in furtherance of the conspiracy is demonstrated through recorded telephone Call 125 made on December 5, 2006, the second day of the court-authorized wire intercept during which **PATTERSON** ordered one (1) ounce, or approximately twenty-eight and seven-tenths (28.7) grams, of cocaine from Carter. **PATTERSON** told Carter that he was "about to pass there for the same thing [he] got last time."

4.) Another example of **PATTERSON**'s later involvement in the conspiracy occurred on January 17, 2007. During recorded Calls 4692, 4693, 4695, and 4696, **PATTERSON** and Carter discuss a narcotics transaction for "four and a-half puppies," or four and one-half ounces, i.e., approximately one hundred twenty-five (125) grams of cocaine. Carter charged **PATTERSON** a price of two thousand seven hundred ($2,700) dollars for the narcotics.

5.) On January 18, 2007, during recorded telephone Call 4730, **PATTERSON** ordered one-half (½) of an ounce (or 14 grams) of cocaine from Carter. Carter asked **PATTERSON** if he wanted "the hard," and **PATTERSON** replied, "Yeah," presumably to indicate that he wanted to purchase cocaine base rather than cocaine hydrochloride.

6.) Another illustrative example of **PATTERSON**'s use of a telephone facility in furtherance of the conspiracy is demonstrated through two calls made on January 27, 2007, also recorded on the court-authorized wire intercept orchestrating a drug transaction for nine (9) ounces, or a quarter (¼) kilogram, of cocaine between **PATTERSON** and Carter. The following is a concise index of those calls:

Call 5466: **PATTERSON** contacted Carter and informed Carter that he needed "the whole nine." Carter advised that he could supply **PATTERSON** with the desired amount of cocaine. **PATTERSON** inquired how much the cocaine would cost, and Carter informed **PATTERSON** that the price would be five thousand two hundred ($5,200) dollars.

Call 5477: **PATTERSON** and Carter agree to meet at Carter's residence to complete the quarter (¼) kilogram transaction described in call number 5466.

7.) A final example of **PATTERSON**'s narcotics dealings with Carter occurred on January 28, 2007, and was recorded as Call 5644. **PATTERSON** contacted Carter and ordered one-

quarter (¼) of an ounce (or 7 grams) of crack cocaine from Carter, using the term "solid" to indicate that he wanted to purchase cocaine base instead of cocaine hydrochloride.

8.) Title III wire intercepts, as well as interviews with Carter and other co-conspirators, indicated that the organization obtained between fifteen (15) and fifty (50) kilograms of cocaine hydrochloride, over fifty (50) grams of cocaine base, and over one thousand (1000) pounds of marijuana during the life of the conspiracy. The amounts directly attributed to **PATTERSON** – one (1) kilogram of cocaine hydrochloride and seven (7) grams of cocaine base – are amounts that were reasonably foreseeable to him as being distributed or possessed with the intent to distribute in this case. This assessment was arrived at through careful analyses of all monitored and recorded telephone calls, telephone records, law enforcement surveillance, and witness statements.

9.) As indicated above, the FBI utilized audio surveillance techniques which captured **PATTERSON** and other co-conspirators communicating over various telephones. Intercepted conversations between **PATTERSON** and Carter and between other co-conspirators would be introduced as evidence, as well as the testimony of cooperating conspirators and investigators.

10.) An employee of the St. Tammany Parish Sheriff's Office analyzed the substances obtained during this investigation, and that analysis determined that they did indeed contain both cocaine and cocaine base, Schedule II narcotic drug controlled substances, and marijuana, a Schedule I drug controlled substance.

**WARREN OTIS PATTERSON** acknowledges and admits that he participated in the conspiracy described above by engaging in the previously-mentioned conduct.

**APPROVED AND ACCEPTED:**

_____  04/02/08        _____  04/02/08
**WARREN OTIS PATTERSON**    (date)         **ARTHUR L. HARRIS, SR.**    (date)
Defendant                                   Attorney for Defendant


                                            _____  4/2/08
                                            **R. CHRISTOPHER COX III**   (date)
                                            Assistant United States Attorney